IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HENRY ALDERETE,

      **Plaintiff,**

vs.                                                                                                   No.  01cv1409 JHG

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Alderete's) Motion to Reverse and Remand for a Rehearing **[Doc. No. 9]**, filed July 1, 2002, and fully briefed September 11, 2002. The Commissioner of Social Security issued a final decision denying Alderete's application for supplemental security income. Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is not well taken and will be DENIED.

### I.  Factual and Procedural Background

Alderete, now forty-three years old, filed his application for supplemental security income on May 18, 2000, alleging disability since at least April 27, 2000 (Tr. 61), due to back pain, headaches, depression, psoriasis, and alcoholism. Tr. 13. Alderete has a "limited" tenth grade education and no past relevant work. On May 21, 2001, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Alderete's back impairment, psoriasis, and headaches did not constitute severe impairments. Tr. 15. Specifically, the ALJ found Alderete "does not

have any 'severe' physical or exertional impairments." *Id.* The ALJ further found Alderete's depression, drug abuse, and insomnia secondary to drug abuse were severe impairments but did not "meet or medically equal Listing Section 12.04 of Appendix 1, Subpart P, Regulations No. 4." *Id.* However, the ALJ found Alderete met Listing Section 12.09 based on marijuana and cocaine abuse. Finding that Alderete's drug abuse was a contributing factor material to the determination of disability, the ALJ determined that Alderete was not disabled pursuant to Public Law 104-121. Tr. 16. The ALJ further found Alderete retained the residual functional capacity (RFC) to perform simple, unskilled work across all exertional levels. As to his credibility, the ALJ found Alderete's testimony was not wholly credible. Tr. 14, 16, 19. Alderete filed a Request for Review of the decision by the Appeals Council. On October 31, 2001, the Appeals Council denied Alderete's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Alderete seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence,"

*Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment

meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Alderete makes the following arguments: (1) the ALJ's finding that his mental impairment limits him to simple, unskilled work is not supported by substantial evidence and is contrary to law; and (2) the ALJ's use of the grids in light of severe mental impairment is contrary to law; and (3) the ALJ's finding that his drug abuse was a material factor in the determination of disability is not supported by substantial evidence and is contrary to law.

**Drug Addiction & Alcoholism**

In 1996, Congress amended the Social Security Act to provide that '[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).  Under the regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol.  20 C.F.R. § 416.935(b)(1).  Under this regulation, the ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol or drugs, and then determined whether any or all of plaintiff's remaining limitations would be disabling.  20 C.F.R. § 416.935(b)(2).

The regulations make clear that a finding of disability is a condition precedent to an application of 42 U.S.C. § 423(d)(2)(C). 20 C.F.R. § 416.935(a). Therefore the Commissioner must determine whether a plaintiff is disabled prior to finding that alcoholism or drugs is a contributing material factor. *Id.* The ALJ must then determine whether plaintiff would still be found disabled if he or she stopped abusing alcohol or drugs. 20 C.F.R. § 416.935(b)(1). If so, then the alcohol abuse or drugs is not a contributing factor material to the finding of disability. 20 C.F.R. § 416.935(b)(2)(ii). If, however, the plaintiff's remaining impairments would not be disabling without the alcohol abuse, then the alcohol abuse is a contributing factor material to the finding of disability. 20 C.F.R. § 416.935(b)(2)(i).

Relying on Dr. E. Chiang's[1] October 6, 2000 Psychiatric Review Technique Form (PRT form), the ALJ found that Alderete met Listing 12.09 (Substance Addiction Disorders).[2] Tr. 16, 255. Pursuant to Public Law 104-121, the ALJ also found Alderete's substance abuse was a contributing factor material to the finding of disability, resulting in a finding of non-disability. Tr.

---

[1] Dr. Chiang, an agency consultant, found Alderete had "agitated depression" and a spotty treatment record reflected by no shows, lack of funds, geographic moves and substance abuse. Dr. Chiang further found Alderete's substance abuse was extensive and had included alcohol, marijuana, and cocaine. Dr. Chiang concluded Alderete's substance abuse was material to the determination of disability. Tr. 255.

[2] Listing 12.09 states in pertinent part:

Substance Addiction Disorders: Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.

The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied.

Pt. 404, Subpt. P, App. 1, Listing 12.09. Dr. Chiang found Alderete met category B (Depressive syndrome).

16. The ALJ cited to the record and found Alderete "ha[d] continued to abuse marijuana, and to some extent, cocaine, during times at issues." *Id.* The ALJ found Alderete not credible as to his claim that he had not used marijuana for years. *Id.* The Court has carefully reviewed the record and finds that substantial evidence supports the ALJ's credibility determination and his finding that Alderete's substance abuse was a contributing factor material to the finding of disability. The record reveals the following:

On **May 31, 1993**, Dr. Carlos Balcazar, a psychiatrist, performed a consultative evaluation on Alderete. Tr. 98-101. Dr. Balcazar reported that Alderete gave a history of alcohol abuse, beginning at age 21. Alderete claimed he would drink beer and whiskey every day to the point of getting intoxicated and would have the shakes when he would stop drinking. Alderete claimed he stopped drinking three years ago, however, admitted he still occasionally had a drink but did not get intoxicated. Alderete also acknowledged the use of LSD from 1984 to 1987, almost daily.

Alderete also reported he had not worked since 1987. Dr. Balcazar noted that Alderete reported that he had not made any attempt to go back to work and spent his time watching TV at home or going out and visiting friends.

Dr. Balcazar made the following observations regarding Alderete during his evaluation: (1) he was appropriately dressed and his general appearance was a little bit disheveled; (2) his attention span was good and his capacity to concentrate was preserved; (3) his communicated affect and his mood did not show any particular quality; (4) his emotional reaction was appropriate to the circumstances and content of thought; (5) both remote and recent memory were well preserved; (6) his intelligence could be in the low-average level; (7) his line of thought was straight, goal oriented, with no loose associations or delusional thinking; (8) his sensorium

was clear during the examination; and (9) he acknowledged the presence of visual hallucinations at the time when he was using LSD. Tr. 100.

Alderete reported he experienced anxiety and depression. However, according to Dr. Balcazar, this was not very evident during the examination. **Alderete also reported use of LSD from 1984 to 1986 and claimed not to have used any drugs since then.** Dr. Balcazar's Diagnosis was: Axis I: Alcohol abuse, in remission. Use of LSD, in remission. *Id.*

Dr. Baltazar opined Alderete had adequate judgment to plan a work sequence. "From a psychiatric standpoint, he could use tools and materials for simple jobs as well as he could perform one- or two-step repetitive tasks at a competitive rate. If sober, I would not foresee difficulty in his interaction with co-workers and supervisory personnel." *Id*.

Dr. Jan Hamilton performed a DDS consultative examination on **March 3, 1997**. Tr. 102-105. **Alderete claimed he had not consumed any form of alcohol since September 1994.** However, **he admitted to smoking crack cocaine two months before (January 1997)**. Tr. 102. Alderete reported he was able to clean house, prepare meals, wash dishes, do laundry, watch television, listen to the radio, and visit with his friend. He also reported he was responsible for his personal hygiene and was able to change his own clothing without assistance. Dr. Hamilton found "lack of specific physical findings" and noted Alderete appeared mildly depressed. Tr. 104, 106.

On **March 4, 1997,** Dr. G.T. Davis, an agency medical consultant, evaluated Alderete. Tr. 109-112. Alderete reported he had been unemployed for about ten or twelve years. He also reported frequently being fired from jobs that he had because of a drinking problem during that time. Tr. 110. **Alderete claimed to have "quit drinking about two years ago."** *Id.*. "He said

7

that he went through CASAA for counseling and treatment, which got him off of the alcohol, **but he said that one year ago, he started using marijuana and crack cocaine.**" *Id.* **Alderete "reported he has been off of that now for two months** and is back in the CASAA program." *Id.* Alderete stated he "feels much better these days." *Id.*

Alderete reported that during the day he stayed at home, watched television, listened to the radio or went to his counseling appointments and sometimes doctors appointments. He also claimed he did some light chores at his brother's home, but he found it is difficult or uncomfortable for his lower back when he lifted over fifty pounds. *Id.*

At that time, Alderete was taking amitriptyline for a sleeping disorder and reported it helped with that problem. Dr. Davis performed a physical examination and found it essentially normal, including the neuromusculoskeletal examination. Tr. 111. Dr. Davis found Alderete did not appear to have physical problems. Dr. Davis opined Alderete's past employment difficulties had more to do with behavioral problems and alcoholism than physical complaints. Tr. 111. Dr. Davis recommended a psychiatric evaluation. Tr. 112.

On **February 22, 1999,** Donna DiVincenzo, a clinical counselor, evaluated Alderete for chemical dependency at the request of the New Mexico Department of Human Services. Tr. 237-242. Alderete was applying for disability and had a **positive urinalysis for marijuana.** *Id.* Alderete reported he had no medical problems, "had not been bothered at all by employment problems in the past 30 days and sees himself as having no need for employment counseling." Tr. 238.

Alderete reported using marijuana at the age of fourteen and **was currently using "pot 3-4 times a week."** *Id.* Ms. DiVincenzo identified marijuana/hashish as Alderete's problem.

Significantly, Alderete reported "no abstinence from his drug of choice," marijuana. Alderete informed Ms. DiVincenzo that he saw no need for alcohol treatment, but saw an extreme need for drug treatment. Alderete also reported he had received alcohol treatment at CASAA twice before, in 1994 and 1996, and had successfully completed the treatment. According, to Alderete he had not consumed alcohol for the past four years but was seeking treatment for marijuana dependency. Ms. DiVencenzo diagnosed Alderete with cannabis dependency.

Dr. Kathryn Spiering, a psychologist with the State of New Mexico Division of Vocational Rehabilitation, evaluated Alderete on **November 29, 1999**. Tr. 114, 118. In her report, Dr. Spiering noted Alderete had applied for vocational rehabilitation services for the fourth time but had never completed any previous program. Tr. 114. Dr. Spiering also noted a long history of cannabis abuse and alcohol dependence. Alderete reported he could clean, mop, and cook at home, as long as he did not pick up anything heavy. *Id.*

Alderete reported his substance abuse started when he was quite young. He begin smoking marijuana when he was twelve years old and drinking when he was fifteen years old. Tr. 114. Alderete reported his marijuana abuse had been more difficult for him to curtail than his alcohol abuse. According to Dr. Spiering, Alderete claimed to have participated in programs at CASAA twice, with varying periods of abstinence. Dr. Spiering noted, **"He currently has not had anything to drink for six months. He stopped using marijuana four-five months ago, although he has experienced one relapse."** Tr. 114.

Dr. Spiering performed various tests to assess Alderete's cognitive and academic abilities, his psychological status, and his ability to follow through with a rehabilitation plan. Tr. 1115. Dr. Spiering opined Alderete would have difficulty with demands for speed, precision, and accuracy.

Tr. 117.  He would also have difficulty comprehending complex information or effectively analyzing situations.  *Id.*  Dr. Spiering noted that t**his was the longest period of time that Alderete had abstained from marijuana and opined that his constant marijuana use contributed to his general lack of motivation and passivity.**  Tr. 118.  Dr. Spiering recommended  "job placement assistance in a relatively structure, not highly demanding situation such as janitorial  work might be suited to his abilities, with continued monitoring of his abstinence from marijuana use."  Tr. 118.

On **March 17, 2000,** Alderete went to the UNM Mental Health Center Intake Department complaining of insomnia for about two months.  Tr. 119.  On that day he was admitted and treated with Droperidol 10 mg IM (intramuscular) and Temazepam 30 mg at bedtime.  *Id.*  Dr. Jenkusky's admission notes indicate Alderete was oriented in all areas and his memory and concentration were intact.  Tr. 121.  Dr. Jenkusky prescribed the Tamazepam due to Alderete's recent high usage of Valium.  Tr. 119.  Alderete was able to sleep with the medication and discharged four days later.  *Id.*

Dr. Jenkusky' discharge summary indicates Alderete reported using marijuana heavily in the past in the amount of approximately five to six joints per day and heavy alcohol use in the amount of approximately a case per day on weekends.  **Alderete claimed to have stopped using marijuana approximately two months prior to his hospital admission.**  *Id.*  Dr. Jenkusky opined the insomnia was due to Alderete's cessation of marijuana.

Dr. Jenkusky performed a mental status examination and noted Alderete's appearance as slightly disheveled but adequately and appropriately dressed.  *Id.*  Dr. Jenkusky noted that Alderete's attitude "was entirely cooperative but possibly not entirely sincere."  *Id.*  Dr. Jenkusky

found Alderete's physical examination "entirely within normal limits." *Id.* Dr. Jenkusky discharged Alderete with the following medications: Serzone 150 mg (antidepressant) twice a day and Temazepam (hypnotic used for sleep disorders) 30 mg at bedtime. Tr. 120.

Dr. Jenkusky's differential diagnoses at admission were: Depression NOS (not otherwise specified), R/O Major Depressive Disorder with Psychotic Features vs. Substance-induced Mood Disorder and Insomnia, also R/O Poly-substance Dependence. Tr. 121. At discharge, Dr. Jenkusky diagnosed Alderete with Depression NOS, Sleep Disorder NOS, Alcohol and Marijuana Dependence in Partial Early Remission. Tr. 119.

Dr. Jenkusky performed a History and Physical on March 17, 2000, prior to Alderete's admission. **Dr. Jenkusky noted that Alderete's alcohol and marijuana history were inconsistent, "in that he has given me at least 3 different stories regarding the timing of his usage**." Tr. 124. **Alderete had reported being sober from alcohol for two years and from marijuana for 2 ½ months.** *Id.* However, **Alderete admitted to having had eight beers six days before coming to UNM Mental Health Center**. *Id.*

Alderete reported no previous admissions to a psychiatric facility, only treatment for substance abuse. Tr. 125. Alderete reported to Dr. Jenkusky that he started smoking marijuana at the age of ten and started drinking alcohol at the age of twelve. Alderete claimed his longest sobriety had been the past year and a half to two years. *Id.* Alderete admitted to using LSD, crack cocaine, amphetamines, and "almost anything I can get my hands [on]." *Id.* Dr. Jenkusky opined Alderete's insight and judgment were intact, except regarding inconsistencies in Alderete's story as to his substance abuse. Tr. 128.

On **April 5, 2000**, Dr. Rexroad evaluated Alderete. Tr. 218. At that time, **Alderete reported being off drugs and alcohol for three months.** *Id.*

On **April 24, 2000**, Dr. Rexroad evaluated Alderete. Tr. 175. Dr. Rexroad noted "Pt. **admits to smoking mj and crack on Sat** (April 22), but says he has no desire to use more." *Id.*

On **June 23, 2000**, Dr. Leroy Gabaldon, an agency psychologist, completed a Psychiatric Review Technique Form and found Alderete met Listing 12.09. Tr. 129. Dr. Gabaldon noted that Alderete admitted to a long history of alcohol use and abuse that appeared to be ongoing. Tr. 130. Significantly, Dr. Gabaldon found that substance abuse was a contributing factor material to the finding of disability. *Id.*

On **October 6, 2000**, Dr. E. Chiang, an agency consultant, completed a Psychiatric Review Technique Form (PRT form) and opined that Alderete met Listing 12.09 (Substance Addiction Disorders). Tr. 243-255. Dr. Chiang reported Alderete's treatment had been "spotty due to no shows, lack of funds, geographic moves and substance abuse." Tr. 255. Dr. Chiang opined that Alderete's substance abuse was extensive and included alcohol, marijuana, and cocaine. Dr. Chiang also found Alderete's substance abuse was a contributing factor material to the finding of disability. *Id.*

It is clear from the record that Alderete gave conflicting evidence as to when he was or was not abusing alcohol, cocaine, and marijuana. On February 10, 1999, denied using marijuana or alcohol. Tr. 215. On February 20, 1999, the UNM Mental Health Center Narrative Form indicated Alderete was dependent on marijuana and suffered from an inability to cut down even though the drug use was harmful. Tr. 216. On February 22, 1999, Alderete reported he was "currently using pot 3-4 times a week." Tr. 238. On February 24, 1999, Alderete tested positive

12

for marijuana. Tr. 212. On February 22, 1999, Alderete was seen at the UNM Mental Health Center. At that time, Alderete reported cannabis abuse and admitted to using marijuana for the past twenty-five years, on and off. Tr. 214. He reported February 19, 1999, as the last time he had smoked marijuana. *Id.* The counselor advised Alderete to "stop use to ensure SSI." *Id.* On April 9, 1999, Alderete claimed he had not smoked marijuana for about two months. Tr. 205. On December 21, 1999, Alderete claimed he had not used alcohol for eight months and marijuana for 3 months. Tr. 232.

On January 28, 2000, Alderete claimed he had not used marijuana for two months and alcohol since January. Tr. 230. On January 31, 2000, Alderete denied substance abuse. Tr. 229. Alderete admitted to using marijuana on January, 2000 and December 19, 1999. Tr. 119, 122. On February 14, 2000, Alderete reported being "clean" for three months. Tr. 226. On February 21, 2000, Alderete reported marijuana use three months prior to this visit. Tr. 225. On March 17, 2000, Alderete admitted he drank seven beers. Tr. 122. On March 26, 2000, Alderete saw Dr. Rexroad and expressed his wish to remain abstinent from marijuana and alcohol. Tr. 188. On March 28, 2000, Alderete reported he had abused alcohol three weeks before and marijuana three months before. Tr. 222. On April 9, 2000, Alderete denied alcohol or drug use "for many months." Tr. 185. On April 11, 2000, Alderete admitted he drank ten beers on February 2000, and admitted daily marijuana use "until 3 months ago." Tr. 223. On April 19, 2000, Alderete denied drug use but reported he "used to smoke mj." Tr. 220, 221. On that day, Alderete was "goal directed and organized, calm and cooperative, and "actually smiling occasionally." *Id.* On April 21, 2000, Alderete denied using marijuana but admitted drinking ten beers, 1 ½ months prior and on New Years Eve. Tr. 219. The only complaint that day was "poor sleep." *Id.* On

April 24, 2000, Alderete admitted he had smoked crack and marijuana on Saturday (April 22, 2000). Tr. 175.

The record does not reflect a time frame in which Alderete was truly abstinent. In reviewing the record, the Court is mindful that it is precluded from reweighing the evidence or substituting its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). As long as substantial evidence supports the ALJ's determination, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495 (10th Cir. 1992). Applying this standard, the Court finds that based on the record as a whole the ALJ's finding that Alderete's substance abuse was a contributing factor material to the finding of disability and was therefore not disabled is supported by substantial evidence and must be affirmed. The ALJ also noted in his decision that in assessing Alderete's credibility he considered Alderete's contradictory testimony as to his substance abuse and concluded that he was not credible. Tr. 16. Substantial evidence also supports this finding.

Alderete argues that the ALJ improperly disregarded the opinion of Drs. Kevin Rexroad and Adam Rosen. Tr. 156, 157, 158, 271. On August 31, 2000, Dr. Rosen wrote a "To Whom It May Concern" letter, stating that Alderete suffered from an agitated depression and was incapacitated by his disease. Tr. 156. Dr. Rosen opined that Alderete would "greatly benefit from G.A. (general assistance) and SSI." Finally, Dr. Rosen stated that Alderete's disability would continue for an indefinite time. Dr. Rexroad submitted an undated letter stating Alderete suffered form "severe, agitated-type depression" and opined that "at this point in [Alderete's] life he was unable to maintain gainful employment, and would benefit from General Assistance." Tr. 157. Dr. Rexroad also asserted that Alderete would be able to return to work once his condition

14

was stabilized. Dr. Rexroad estimated Alderete's recovery time at six to twelve months. *Id.* Dr. Rexroad submitted another undated letter stating Alderete attended his medication management appointments regularly. On February 22, 2001, Dr. Rosen wrote a letter addressed to Alderete, stating Alderete was being treated for depression and insomnia and "it has affected your ability to work." Tr. 271.

The ALJ gave "no significant weight" to Dr. Rosen's letter because "it [was] brief, conclusory, and unsupported by the evidence."[3] Tr. 17. Moreover, the ALJ found the letter contradicted the Narrative Form of that same day which indicated that Alderete was feeling much better. The record reflects that on August 31, 2000, Dr. Rosen reported Alderete was "feeling better, much better than he was" and "was trying to get out of his house." Tr. 161. Alderete also reported everything was "going smoothly," he was "doing more exercise" and he was "sleeping like a baby." *Id.* Dr. Rosen noted Alderete had "improved greatly on current regimen started in California." *Id.* Dr. Rosen described Alderete as well groomed, cooperative, good mood, etc. *Id.* At that time, Alderete promised to come to his appointments in the future because he needed his medications.

The ALJ gave no significant weight to Dr. Rosen's February 22, 1001 letter because "he did not list any specific functional limitations." Tr. 17. The ALJ found that Alderete's medical treatment and his daily activities were consistent with a finding that Alderete was able to perform simple, unskilled work. Tr. 18.

---

[3] In his decision, the ALJ addressed the August 31, 2000 letter as having been authored and submitted by Dr. Rexroad. However, the record indicated that Dr. Rosen wrote the August 31, 2000 letter and examined Alderete on that same day. Dr. Rexroad submitted two undated letters. *See* Tr. 157, 158.

15

The ALJ also discounted Dr. Rexroad's comments that Alderete attended his medication management appointments regularly and noted that the record indicated several "no shows." Tr. 18. Substantial evidence supports this finding. *See* Tr. 162 (no show, no call); 163 (no show, no call); 164 (no show, no call); 165 (no show, no call); 168 (non-compliance); 195 (no show, no call); 196 (no show, no call); 200 (no show, no call); 201 (called to cancel).

The regulations provide that the agency generally will give more weight to medical opinions from treating sources than those from non-treating sources and that the agency will give controlling weight to the medical opinion of a treating source if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is <u>not inconsistent with the other substantial evidence</u>." 20 C.F.R. § 404.1527(d)(2)(emphasis added). If the opinion of the claimant's physician is to be disregarded, specific legitimate reasons for this action must be set forth. *Byron v. Heckler*, 742 F.2d 1232 (10th Cir. 1984). Moreover, a treating physician's opinion that a claimant is disabled is not dispositive. *See Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994). In this case, the ALJ set forth specific legitimate reasons for disregarding the opinions of Drs. Rexroad and Rosen. Accordingly, for the foregoing reasons, the Court finds that the ALJ's finding that Alderete is not disabled is supported by substantial evidence.

A judgment in accordance with this Memorandum Opinion will be entered.

_____
JOE H. GALVAN
**UNITED STATES MAGISTRATE JUDGE**